**BRUNO et al. v. GETZELMAN et al.**

No. 8929—Opinion Filed June 11, 1918.

(173 Pac. 850.)

1. **Allegations of Execution of Written Instrument—Verified Denial.**

Under the provisions of section 4759, Rev. Laws 1910, in all actions allegations of the execution of written instruments or of any power or authority shall be taken as true, unless the denial of the same is verified by the affidavit of the party or his attorney.

2. **Indians—Conveyance of Allotment — Title of Grantee—Statute.**

The conveyance of a portion of the allotment of a member of the Citizen Band of Pottawatomie Indians of Oklahoma in excess of 80 acres, approved by the Secretary of the Interior under the terms of Act Cong. Aug. 15, 1894, c. 290 (28 Stat. 286), extinguishes the Indian title, and the grantee holds such lands free from any restrictions upon alienation.

3. **Indiians — Partial Conveyance of Allotment—Title of Grantee—Patent—Statute.**

A patent thereafter issued to such grantee containing the provisions set forth in Act Cong. Feb. 8, 1887, c. 119 (24 Stat. 388), to the effect that the United States does and will hold the land for the period of 25 years, in trust for the sole use and benefit of the Indian or in case of his decease of his heirs, according to the laws of the state or territory where such land is located, and at the expiration of said period the United States will convey the same by patent to said Indian or his heirs as aforesaid, in fee, discharged of said trust and free of any charge or incumbrance whatsoever, does not have the effect of reimposing restrictions upon the alienation of said lands by said grantee.

4. **Judgment—"Collateral Attack."**

A "collateral attack" on a judgment is an attempt to avoid or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it.

5. **Same—Finding of Jurisdictional Facts—Conclusiveness.**

A finding of the jurisdictional facts in a domestic judgment is conclusive in a collateral attack upon such judgment attempting to again put such facts in issue.

(Syllabus by Rummons, C.)

Error from District Court, Pottawatomie County; Chas. B. Wilson, Jr., Judge.

Action by John A. Bruno and another against M. C. Getzelman and another. Judgment for defendants and plaintiffs bring error. Affirmed.

Baldwin & Carlton, for plaintiffs in error.

M. W. Janes, Chas. E. Wells, and Abernathy & Howell, for defendants in error.

Opinion by RUMMONS, C. This action was commenced by John A. Bruno and Mary Bruno, the plaintiffs below, against the defendants to recover the possession of 80 acres of land in Pottawatomie county, damages for withholding possession, for mesne profits, to quiet title to said lands in plaintiffs, and to cancel and set aside two decrees in foreclosure affecting said lands. It was alleged in the petition of plaintiffs that they were the owners in fee simple of the lands and entitled to immediate possession thereof; that plaintiffs acquired title to said lands by virtue of a patent issued therefor to Mary Bruno by the United States under date June 22, 1904, under the provisions of Act Cong. Feb. 8, 1887, c. 119 (24 Stat. 388), as amended by Act Cong. March 3, 1891, c. 543 (26 Stat. 1020). The petition further alleges that on February 12, 1910, M. A. Milner recovered a judgment in the superior court of Pottawatomie county decreeing the foreclosure of a mortgage upon said lands and ordering said lands sold to satisfy said judgment. Plaintiffs allege that no service of summons was had upon them or either of them, and that they did not enter their appearance in said action or authorize the same to be done, and that said judgment was null and void and of no force and effect. The petition further alleges that on June 4, 1910, the defendant M. C. Getzelman recovered a judgment in the superior court of Pottawatomie county against the plaintiffs decreeing the foreclosure of a mortgage upon said land executed by plaintiffs and ordering a sale of said lands to satisfy said judgment. Plaintiffs allege that no summons was ever served upon them in said action, and that they did not enter their appearance in said action or authorize the same to be done, and that said judgment is void and of no effect. The petition further alleges that at the time of the execution of the mortgages and the rendition of said judgments they were members of the Citizen Band of Pottawatomie Indians and the said lands were restricted lands, that plaintiffs had no capacity to alienate said lands by deed or mortgage, and that said judgments are therefore null and void.

The defendant M. C. Getzelman filed an answer in effect a general denial. The defendant B. C. Getzelman filed his answer and cross-petition, denying generally the allegations of the petition, and pleading affirmatively the judgments set up in the petition of plaintiff, the sale of said lands

thereunder, the execution and delivery of sheriff's deeds therefor to M. C. Getzelman, and a conveyance by M. C. Getzelman to him. Said answer further alleges that said lands were originally patented by the United States to John A. Bruno, a Pottawatomie Indian; that thereafter, on March 19, 1903, said John A. Bruno for $1 and other valuable considerations conveyed said lands to his wife, Mary Bruno, and thereafter, on November 21, 1903, said deed of conveyance was approved by the Secretary of the Interior, and that title to said lands passed and was transferred by reason of said conveyance and said approval from John A. Bruno to Mary Bruno, his wife; that, by the execution of said deed and the approval thereof by the Department of the Interior of the United States, pursuant to acts of Congress, all the right, title, and interest of the United States in and to said lands and all restrictions upon the right to alienate or incumber the same was extinguished, and said lands became alienable; that thereafter the said Mary Bruno, joined by her husband, John A. Bruno, executed the mortgages foreclosed in the actions upon which the judgments set up in the petition were rendered. The answer thereupon prayed that title of said defendant to said lands be quieted, and that he be adjudged and decreed to be the owner in fee simple thereof.

The plaintiff replied to said answer and cross-petition, denying generally the allegations therein contained. This reply was not verified. Both the plaintiffs and the defendants moved for judgment on the pleadings. The trial court overruled the motion of plaintiffs and rendered judgment upon the pleadings in favor of the defendants. The plaintiffs here seek to reverse this judgment.

The lands in controversy were a part of the allotment of the plaintiff John A. Bruno, a member of the Citizen Band of Pottawatomie Indians in Oklahoma. The allotment was made pursuant to Act Cong. Feb. 8, 1887, c. 119 (24 Stat. 388), and Act Cong. March 3, 1891, c. 533 (26 Stat, 1019). Under the provisions of the act of Congress of March 3, 1891, patents were issued to the allottees under the terms of act of Congress of February 8, 1887, which provides:

"That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patent shall be of the legal effect, and declare, that the United States does and will hold the land thus allotted, for the pe-

riod of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indians, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever; Provided, that the President of the United States may in any case in his discretion extend the period.

"And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void." 24 Stat. 389.

Act Cong. Aug. 15, 1894, c. 290 (28 Stat. 286), is as follows:

"Provided, that any member of the Citizen Band of Pottawatomie Indians or the Absentee Shawnee Indians of Oklahoma, to whom a trust patent has been issued under the provisions of the act approved February eighth, eighteen hundred and eighty-seven (Twenty-fourth Statutes, three hundred and eighty-eight), and being over twenty-one years of age, may sell and convey any portion of the land conveyed by such patent in excess of eighty acres, the deed of conveyance to be subject to approval by the Secretary of the Interior under such rules and regulations as he may prescribe, and that any Citizen Pottawatomie not residing upon his allotment, but being a legal resident of another state or territory, may in like manner sell and convey all the land covered by said patent, and that upon the approval of such deed by the Secretary of the Interior the title to the land thereby conveyed shall vest in the grantee therein named. And the land sold and conveyed under the provisions of this act shall, upon proper recording of the deeds therefor, be subject to taxation as other lands in said territory, but neither the lands covered by such patents not sold and conveyed under the provisions of this act, nor any improvements made thereon, shall be subject to taxation in any manner by the territorial or local authorities during the period in which said lands shall be held in trust by the United States."

It is contended by counsel for plaintiffs that by the terms of the patent issued to Mary Bruno these lands were inalienable for a period of 25 years, and at the time of the judgments upon which the title of the defendants rests were inalienable; that the title of Mary Bruno in and to said lands could not be alienated by a deed or mortgage, nor could it be alienated by the judgment of any court or any process pursuant to such judgment. Plaintiffs rely upon the case of Gan-

non v. Johnston, 40 Okla. 695, 140 Pac. 430, Ann. Cas. 1915D, 522, where it is held that the restrictions contained in section 16 of the Supplemental Treaty with the Choctaw and Chickasaw Nation (Act July 1, 1902, c. 1362, 32 Stat. 643) run with the land. Therefore it is contended that these lands were inalienable during the 25-year period prescribed by the acts of Congress. Counsel for plaintiffs, however, overlook the effect of the act of Congress of August 15, 1894, which removes the restrictions upon the alienation of the allotments of members of the Citizen Band of Pottawatomie Indians in excess of 80 acres, subject to the approval of the Secretary of the Interior.

The answer of the defendant B. C. Getzelman alleges that in 1903, pursuant to said last mentioned act of Congress, the plaintiff John A. Bruno executed a conveyance of these lands, and that this conveyance was duly approved by the Secretary of the Interior in accordance with the terms of said act. Under the provisions of section 4759, Rev. Laws 1910, these allegations, not having been denied under oath, must for the purposes of this case be taken as true. It therefore follows that, the plaintiff John A. Bruno having conveyed these lands by approval of the Secretary of the Interior, the Indian title was thereby extinguished, and the grantee, Mary Bruno, held said lands free from any restrictions upon alienation, and therefore had full power to execute the mortgage which was subsequently foreclosed.

The patent issued by the United States to Mary Bruno in 1894 cannot have the effect of reimposing restrictions which had been removed pursuant to an act of Congress. In Jones v. Meehan, 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49, it is held:

"The rights of lessees of the heir of an Indian to whom title to land was granted by an Indian treaty cannot be divested by any subsequent action of the lessor or of Congress or of the executive departments."

In Francis v. Francis, 203 U. S. 233, 27 Sup. Ct. 129, 51 L. Ed. 165, Mr. Justice Harlan, who delivered the opinion of the court, says:

"It follows that the words in the patent of 1827, 'but never to be conveyed by them or their heirs without the consent and permission of the President of the United States,' were ineffectual as a restriction upon the power of alienation. The President had no authority, in virtue of his office, to impose any such restrictions; certainly not without the authority of an act of Congress, and no such act was ever passed."

The restrictions on the alienation of these

lands having once been removed in accordance with the act of Congress the executive authority of the United States could not thereafter reimpose any restrictions thereon affecting the rights of the grantee of the original allotee or those claiming under her.

Upon this state of the pleadings the judgments upon which the defendants rested their title were not void for want of jurisdiction of the subject-matter of the action in which they were rendered.

It is, however, contended by counsel for plaintiffs that said judgments are void for the reason that no service of summons was had upon plaintiffs. This action is clearly a collateral attack upon said judgments. In Continental Gin Co. v. DeBord, 34 Okla. 66, 123 Pac. 159, this court defines "direct" and "collateral" attack as follows:

"A 'direct attack' on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law.

"A 'collateral attack' on a judicial proceeding is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it."

In this action the plaintiffs seek to recover possession of the land in controversy, damages for withholding the same, and mesne profits. They seek to avoid and deny the force and effect of the judgments complained of as an incident to the main purpose of the action, the recovery of the land. This action therefore comes squarely within the definition of "collateral attack" above quoted.

The judgment attacked and exhibited as a part of the petition of the plaintiffs recites that the plaintiffs, defendants in that action, "had each been duly notified more than 24 days prior to this by personal service as required by law." In Blackwell v. McCall, 54 Okla. 96, 153 Pac. 815, this court says:

"An adjudication of the jurisdictional facts in a domestic judgment is conclusive in a collateral proceeding attacking such judgment by attempting to again put such facts in issue."

See Daugherty v. Feland, 59 Okla. 122, 157 Pac. 1144.

From the foregoing authorities it is clear that the plaintiffs could not attack the validity of the judgments said to be void in this proceeding. The allegations of the petition, therefore, as to want of service upon the plaintiffs state no cause of action to avoid said judgments.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.